CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
September 16, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Megan Poff
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER LEE KNIGHT,** | ) | |
| **Plaintiff,** | ) | **Case No. 7:26-cv-00209** |
| | ) | |
| **v.** | ) | |
| | ) | **By: Michael F. Urbanski** |
| **POCAHONTAS CORRECTIONAL** | ) | **Senior United States District Judge** |
| **CENTER, et al.,** | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Christopher Lee Knight, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Pocahontas State Correctional Center (PSCC), Warden Tikki Hicks, and Brittany Gross. The case is presently before the court on the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. Knight has responded to the motion, ECF No. 15, and the motion is ripe for review. For the following reasons, the motion to dismiss is **GRANTED**.

### I. Background

On December 17, 2023, while working in the kitchen at PSCC, Knight volunteered to provide a urine sample. Compl., ECF No. 1, at 5. He was initially informed that the sample tested positive for fentanyl and Suboxone. Id. After the sample was poured in another cup, it only tested positive for fentanyl. Id. Knight alleges that he was taking Buspar at that time and that the medication is "known for causing false/positive" drug tests. Id. He alleges that Hicks refused to send the sample to a lab for additional testing. Id. He further alleges that his mental

health provider refused to intervene and advised him that none of his prescribed medications would cause a false positive test. Id.

Knight also attempted to explain to Gross that he had not used drugs for several years. Id. Nonetheless, Gross "wrote [him] a couple of charges" that he "refused," and Knight was placed in restricted housing for "about 3 months." Id. at 6. The restricted housing included 45 days in the Restorative Housing Unit (RHU) and an eight-day placement in "isolation/medical" during which he did not have access to a phone or shower. Pl.'s Resp., ECF No. 15, at 2. Knight was also "forced to go to a level 5 prison as a level 2 inmate," Compl. at 6, where he was required to participate in a fentanyl response program, Pl.'s Resp. at 4. Knight alleges that his mental and physical health declined as a result and that he required a lot of mental health assistance and support from counselors. Id.

Knight's pleadings indicate that he was convicted of the disciplinary offenses with which he was charged. As a result of the convictions, he lost phone and visitation privileges for two years. Id. He also lost good time credits and his prison job. Pl.'s Resp. at 3–4.

In his complaint, Knight claims that the defendants violated his right to procedural due process under the Fourteenth Amendment. Compl. at 5. In his response to the motion to dismiss, Knight also claims that the two-year loss of visitation privileges violated his First Amendment right to association, the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment, and his right to substantive due process. Pl.'s Resp. at 3. He seeks to recover monetary damages for the alleged constitutional violations. Compl. at 8.

## II. Standard of Review

The defendants have moved to dismiss Knight's complaint under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. To survive dismissal for failure to state a claim, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal quotation marks and brackets omitted). Additionally, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks omitted).

When evaluating whether a complaint states a claim upon which relief can be granted, "the court must construe all factual allegations in the light most favorable to the plaintiff." Wilcox v. Brown, 877 F.3d 161, 166–67 (4th Cir. 2017). "Additionally, when a plaintiff raises a civil rights issue and files a complaint pro se, the court must construe pleading requirements liberally." Id. "But liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020). "[P]ro se pleadings, like counseled ones, must contain more than labels and conclusions," Seabrook v. Driscoll, 148 F.4th 264, 269–70 (4th Cir. 2025) (internal quotation

marks omitted), and set forth "enough facts to state a claim for relief that is plausible on its face," Thomas v. Salvation Army S. Terr., 841 F.3d 632, 637 (4th Cir. 2016) (internal quotation marks omitted).

## III. Discussion

Knight filed suit against the defendants under 42 U.S.C. § 1983. Section 1983 imposes liability on any person who, under color of state law, deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. The statute "is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A. Claims Against PSCC

The defendants correctly contend that Knight has no viable claim for relief under § 1983 against PSCC. Because it is a state prison, PSCC is not a "person" subject to liability under the statute.* See Robertson v. Dameron, No. 7:22-cv-00086, 2022 WL 2654980, at *1 (W.D. Va. July 8, 2022) ("It is well settled that a state prison is not a 'person' subject to suit

* The same is true for any individual defendant sued in their official capacity. See Fauconier v. Clarke, 966 F.3d 265, 279–80 (4th Cir. 2020) ("[W]hereas 42 U.S.C. § 1983 permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief.").

under § 1983.") (citing Va. Office for Prot. & Advocacy v. Reinhard, 405 F.3d 185, 189 (4th Cir. 2005)). Accordingly, any claim under § 1983 against PSCC must be dismissed.

## B. Claims against Hicks and Gross

### 1. Procedural Due Process Claims

Knight's complaint asserts claims for denial of procedural due process against Hicks and Gross. The claims stem from the fact that Knight's positive urine sample "was never sent to a lab" for additional testing. Compl. at 5.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "To establish that a government actor violated this proscription, 'a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law.'" Cartagena v. Lovell, 103 F.4th 171, 182 (4th Cir. 2024) (quoting Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015)). In the absence of a protected liberty or property interest, "there can be no federal procedural due process claim." Experimental Holdings, Inc. v. Farris, 503 F.3d 514, 519 (6th Cir. 2007).

A protected liberty interest may arise from the Constitution itself or through state laws or policies. Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To establish a state-created liberty interest, an inmate in Virginia must "point to a Virginia law or policy providing him with an expectation of avoiding the conditions of his confinement and demonstrate that those conditions are harsh and atypical in relation to the ordinary incidents of prison life." Prieto, 780 F.3d at 252; see also Sandin v. Conner, 515 U.S. 472, 481–82 (1995). "[P]roperty interests 'are created . . . by existing rules or understandings that stem from an independent source such

as state law.'" Brown v. Stapleton, 142 F.4th 252, 256 (4th Cir. 2025) (quoting Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)). "To have a property interest in a benefit, a person . . . must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." Roth, 408 U.S. at 577.

To the extent Knight claims that he was deprived of procedural due process in connection with the prison disciplinary proceedings, the Supreme Court has recognized that "constitutional due process protections extend to prison disciplinary proceedings that could adversely impact an inmate's liberty interest—such as the loss of good time credits." Lennear v. Wilson, 937 F.3d 257, 268 (4th Cir. 2019) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)). However, an inmate "may not challenge the validity of a disciplinary conviction [resulting in the loss of good time credits] through a damages suit under § 1983 . . . 'unless the plaintiff can demonstrate that the conviction . . . already has been invalidated.'" Moskos v. Hardee, 24 F.4th 289, 295 (4th Cir. 2022) (quoting Heck v. Humphrey, 512 U.S. 477, 487 (1994)). Knight does not allege that any of the disciplinary convictions stemming from his positive urine sample have been reversed, invalidated, or expunged. Accordingly, he has no viable due process claim under § 1983 stemming from a conviction that resulted in the loss of good time credits.

Knight also alleges that he lost telephone and visitation privileges for two years as a result of his convictions, as well as his prison job. None of these penalties, however, implicate the procedural protections afforded by the Due Process Clause. The Supreme Court has recognized that the withdrawal of visitation privileges for up to two years is "not a dramatic departure from accepted standards for conditions of confinement." Overton v. Bazzetta, 539 U.S. 126, 137 (2003) (citing Sandin, 515 U.S. at 485). Under similar circumstances, courts have

held that an inmate "lacks a liberty interest in his visitation and telephone privileges." Coleman v. Long, 772 F. App'x 647, 650 (10th Cir. 2019); see also Castillo v. FBOP FCI Fort Dix, 221 F. App'x 172, 174–75 (3d Cir. 2007) (concluding that the loss of telephone and visitation privileges for two years did not implicate a cognizable liberty interest). Likewise, courts have long held that an inmate does "not have a constitutionally protected liberty or property interest in his prison job," and Knight does not point to any state law or policy that confers a legitimate claim of entitlement to continued employment while in the custody of the VDOC. Backus v. Ward, No. 98-6331, 1998 WL 372377, at *1 (4th Cir. June 8, 1998) (citing Sandin, 515 U.S. at 486-87; Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995)). Thus, to the extent Knight claims that any of the foregoing penalties were imposed without due process, such claim must be dismissed.

Knight has also failed to state a claim for denial of procedural due process stemming from his temporary placement in restricted housing after testing positive for fentanyl. Because "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement," any liberty interest must "arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). As noted above, this requires allegations sufficient to show that the conditions of confinement were "harsh and atypical in relation to the ordinary incidents of prison life," as well as "a Virginia law or policy providing . . . an expectation of avoiding the conditions of confinement." Prieto, 780 F.3d at 252. In deciding whether conditions of confinement in restricted housing are "harsh and atypical," courts consider: (1) the magnitude of the confinement restrictions; (2) whether the restrictions were for an indefinite period; and (3) whether the assignment to

restrictive confinement had any collateral consequences on the inmate's sentence. Cartagena, 103 F.4th at 183.

Here, Knight's pleadings provide little detail regarding the magnitude of confinement restrictions to which he was subject in restricted housing. Even if the court were to assume that the first factor weighs in Knight's favor, however, "the severity of the conditions alone are insufficient to create a liberty interest." Smith v. Collins, 964 F.3d 266, 277 (4th Cir. 2020). Instead, the court must consider the indefiniteness of the conditions, as well as their duration, in determining whether prisoners have a sufficient liberty interest in avoiding such conditions of confinement. Id. These additional considerations plainly weigh against finding a liberty interest in this case. Knight alleges that he was placed in restricted housing for approximately three months, which included 45 days in the RHU and eight days in "isolation/medical." Pl.'s Resp. at 2. Thus, his placement in restricted housing was not indefinite, and the overall period of time in which he was subject to more restrictive conditions was far briefer than the duration that courts have found to implicate a protected liberty interest. Compare id. at 279 (concluding that "four-plus years in solitary confinement" was "significant enough to tip the indefiniteness factor in Smith's favor"), and Incumaa v. Stirling, 791 F.3d 517, 531 (4th Cir. 2015) (addressing "an exceptional 20-year stint in highly restrictive solitary confinement"), with Cartagena, 103 F.4th at 183–84 (affirming the dismissal of a due process claim premised on an 18-month term of confinement in a restrictive treatment program where the inmate acknowledged that the conditions of his confinement could be relaxed as time passed), and Kimble v. Swink, No. 22-6437, 2024 WL 688105, at *6 (4th Cir. Feb. 20, 2024) (affirming the dismissal of a due process claim where an inmate was confined in segregation "only 398 days"). Additionally, Knight

does not identify any collateral consequences resulting from his placement in restricted housing. Consequently, the court cannot reasonably infer that he was deprived of a protected liberty interest as a required to state a claim for denial of due process.

Knight has also failed to state a claim for denial of due process stemming from his transfer to a Level 5 facility. The Constitution itself confers no protected interest in avoiding transfer to a higher security prison, see Wilkinson, 545 U.S. at 221–22 (citing Meachum v. Fano, 427 U.S. 215, 225, (1976)), and Knight has not plausibly alleged that he has a state-created liberty interest in being classified at a particular security level or housed in a specific correctional facility.

For these reasons, the defendants' motion to dismiss will be granted as to the claims for denial of procedural due process asserted against Hicks and Gross.

**2. Additional Claims Stemming from the Loss of Visitation Privileges**

In his response to the defendants' motion to dismiss, Knight also asserts that the two-year visitation restriction imposed as a disciplinary penalty violated his First Amendment right to association, the Eighth Amendment's prohibition on the infliction of cruel and unusual punishment, and his right to substantive due process. As a general rule, a plaintiff may not raise entirely new claims in a response to a motion to dismiss. See S. Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013). In any event, these new claims are also subject to dismissal for failure to state a claim. See Overton, 539 U.S. at 128, 134–37 (holding that a two-year restriction on visitation for prisoners who committed two substance abuse violations did not violate the substantive due process mandate of the Fourteenth Amendment, or the First or Eighth Amendments);

Williams v. Ozmint, 716 F.3d 801, 805–08 (4th Cir. 2013) (holding that the suspension of an inmate's visitation privileges for two years, which was imposed without a hearing or a finding that he actually possessed contraband, did not violate a clearly established right under the First Amendment, the Due Process Clause of the Fourteenth Amendment, or the Eighth Amendment); Castillo, 221 F. App'x at 176 (concluding that the loss of visitation privileges for two years did "not amount to excessive punishment under the Eighth Amendment . . . or to the kind of extreme deprivation of prison conditions prohibited under the Eighth Amendment") (internal citations and quotation marks omitted).

## IV. Conclusion

For these reasons, the court concludes that Knight has failed to state a plausible claim for relief under § 1983 against any of the named defendants. Accordingly, the defendants' motion to dismiss, ECF No. 12, is **GRANTED**. An appropriate order will be entered.

Entered: September 16, 2026

Michael F. Urbanski
U.S. District Judge
2026.09.16
10:08:50 -04'00'

Michael F. Urbanski
Senior United States District Judge